FILED
2006 Jul-05 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AMY ROLIN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.: 04-CV-3555-VEH** |
| v. | } | |
| | } | |
| **ROSIE'S RESTAURANTS, INC.,** | } | |
| **d/b/a ROSIE'S MEXICAN** | } | |
| **CANTINA** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Court has before it the January 13, 2006 motion of Defendant Rosie's Restaurant d/b/a Rosie's Mexican Cantina ("Defendant") for summary judgment as to Plaintiff Amy Rolin's gender discrimination and retaliation claims (Doc. 9).   For the reasons set forth below, the Defendant's motion for summary judgment is due to be denied in part and granted in part as to Plaintiff's gender discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §2000e <u>et seq</u>.

1

# I. Procedural History

Plaintiff Amy Rolin commenced this action on December 30, 2004, by filing a complaint in this Court alleging that her former employer violated her rights under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e et seq. by subjecting Plaintiff to disparate treatment in disciplinary actions based on gender and retaliating against Plaintiff after she filed a complaint with the Defendant regarding racially offensive comments made by one employee to another.

On January 13, 2006, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff Rolin cannot establish a prima facie case of gender discrimination; (2) even if Plaintiff Rolin can establish a prima facie case of gender discrimination, Plaintiff Rolin has failed to present substantive evidence that the Defendant's proffered legitimate, non-discriminatory, and non-retaliatory reasons are pretext for discrimination; (3) Plaintiff Rolin cannot establish a prima facie case of Title VII retaliation; (4) even if Plaintiff Rolin can establish a prima facie case of retaliation, Plaintiff Rolin has failed to present substantive evidence that the Defendant's proffered legitimate, non-discriminatory, and non-retaliatory reasons are pretext for discrimination.

The Defendant has submitted evidence[1] in support of its motion for summary judgment and filed a supporting brief on January 13, 2006. On January 27, 2006, the Plaintiff filed evidence[2] and a supporting brief in opposition to the Defendant's motion for summary judgment. The Defendant filed a reply brief on February 14, 2006. The Plaintiff filed a Sur-reply on February 16, 2006.

## II. Standard of Review

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56 (c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.

---

[1] The Defendant submitted the depositions of Amy Kay Rolin; Tina Marie Clifford, Daniel Tod Craig, and Michael Dandridge Oliver. The Defendant also submitted affidavits of Amanda Corley, Phillip Small, Kevin Harper, Matt Sikes, and Tina Clifford.

[2] The Plaintiff filed the Defendant's Response to Plaintiff's Interrogatory number 3.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the

absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may

either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[3]

Plaintiff, Amy Rolin ("Rolin"), is a female who worked as a server at Defendant Rosie's University Drive location in Huntsville, Alabama (the "Restaurant").  Rolin was employed at Rosie's from the beginning of July 2002 until her termination on or about March 5, 2004. (Complaint, ¶ 5; ¶ 1; Rolin Dep. at 28).

Tina Clifford ("Clifford") is the general manager of the Restaurant.  (Clifford Dep. at 6).  Clifford has been employed at the Restaurant for ten years and has been the general manager there for seven years.  (Clifford Dep. at 6).  As the general manager, Clifford, sometimes in consultation with one or more of the Restaurant's

---

[3] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the facts are presented in the light most favorable to the Plaintiff.  Facts are undisputed unless otherwise expressly noted. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.

owners, David Martin, B.J. Fratesi, and Tod Craig ("Craig"), makes employment decisions, including decisions regarding employee discipline, for the Restaurant's employees. (Clifford Dep. at 10-12, 15). Clifford and Craig were the individuals that made the decision to terminate Rolin. (Rolin Dep. at 29).

Dan Oliver ("Oliver") was an assistant manager at Rosie's from November 1998 until June 2004. (Oliver Dep. at 7). Oliver was the acting general manager of the Restaurant from the week before Thanksgiving, 2003 until February 17, 2004, during the time that Clifford was on maternity leave. (Oliver Dep. at 9; Clifford Dep. at 83). Oliver is no longer employed by Rosie's. (Oliver Dep. at 7). Matt Sikes ("Sikes") is presently, and was at all times relevant to this litigation, an assistant manager at the Restaurant. (Clifford Dep. at 71-72).

Barnie Perez ("Perez") is a server for Rosie's. Perez is Puerto Rican and has been a server since May 1998. (Clifford Affidavit at 2) Rolin has identified Perez as her comparator. (Rolin Dep. at 18, 48). Rolin bases her claims of discrimination on the fact that she feels that she was subjected to discrimination on the basis of gender when the Defendant did not discipline Perez after he made racially inappropriate remarks to a co-worker. (Rolin Dep. at 18, 48).

Kevin Harper ("Harper") is an African American male employee of the Restaurant. Harper was, at the time of the events giving rise to this litigation, a

7

server.  He is  presently an assistant manager at the Restaurant.  (Harper Affidavit at 1; Clifford Dep. at 77).  Phillip Small ("Small") is a former Rosie's server who made a complaint of sexual harassment against Rolin.  (Small Affidavit at 2; Clifford Dep. at 80).

Amanda Corley ("Corley") is a former employee of Rosie's.  Corley was hired as a server in September 2003, was promoted to assistant manager in November 2003, and remained in that position until she quit in February 2005.  (Corley Affidavit at 1).  Corley also made a complaint of sexual harassment against Rolin.  (Corley Affidavit at 4; Clifford Dep. at 86).

Defendant maintains a "zero tolerance" policy regarding workplace harassment. (Rolin Dep. at 42:23-43:1).  Defendant created an employee handbook with policies regarding discrimination, harassment, and the discussion of tips.  The handbook is distributed to employees upon hiring.  (See Plaintiff's Exhibit 1: Defendant's Response to Interrogatory No. 3).  Rosie's does not have a progressive discipline policy.  (Craig Dep. at 7; Clifford Dep. at 22-23).  Disciplinary decisions are made on a case-by-case basis and are based on, among other things, the severity of the offense.  (Clifford Dep. at 23, 26, 119).  A written warning is referred to, within Rosie's organization, as a "blue slip." (Clifford Dep. at 25).  When deciding upon the proper discipline for an employee's conduct, Rosie's takes into

consideration an employee's prior conduct, disciplinary history and surrounding circumstance revealed from the investigation.  (Clifford Dep. at 40-42).

**Incident Between Perez and Harper**

On or about November 25, 2003, which was the Tuesday prior to Thanksgiving Day, Harper, an African American server, and Perez, a Hispanic server, were working the same shift.  (Harper Affidavit at 1; Clifford Dep. at 71). Harper and Perez got into a verbal altercation over Perez not assisting other servers carrying food from the kitchen to the tables.   In response to being confronted in front of his co-workers, Perez, also using inappropriate language, exchanged words with Harper and called Harper a "nigger" and a "porch monkey." (Harper Affidavit at 3).  Harper responded by calling Perez a "dirty Mexican."  (Harper Affidavit at 3).  This exchange took place in the kitchen presence of several co-workers, including Rolin.  (Harper Affidavit at 3).

Rolin, who had witnessed the incident, told Harper that she was going to report Perez if Harper did not.  (Harper Affidavit at 3).  Rolin reported the incident to an assistant manager, Matt Sikes, a manager present at the Restaurant at the time.  (Sikes Affidavit at 1; Clifford Dep. at 72).   After Sikes learned of the incident, he spoke with Harper and told him that racial slurs against co-workers violated Rosie's policies and would not be tolerated.  The next day, the Wednesday

9

prior to Thanksgiving Day, 2003, Sikes informed Oliver, the acting general manager, about the confrontation the prior day between Perez and Harper. (Sikes Affidavit at 2).

Sikes did not tell Oliver that Rolin made the initial report but simply that the incident occurred and provided the facts as he understood them. (Sikes Affidavit at 2; Oliver Dep. at 12). Craig learned of the Perez/Harper incident through Sikes at a manager's meeting shortly after the incident. (Craig Dep. at 20). However, Clifford did not learn that Rolin was involved in the reporting of the incident between Perez and Harper until Rolin filed her EEOC Charge of Discrimination on or about April 19, 2004. (Clifford Affidavit at 2).

After learning of the incident, Oliver spoke with Harper to learn first hand what had transpired. (Oliver Dep. at 12). At the time that the incident was reported to Oliver, Perez was already out of town for his Thanksgiving vacation. (Oliver Dep. at 13; Clifford Dep. at 74). On Perez' first day back from his vacation, December 2, 2003, Oliver spoke with him regarding the incident and issued a written warning to him for using racially inappropriate language towards a co-worker. (Oliver Dep. at 13-15; Clifford Dep. at Plaintiff's Exhibit No. 2). Oliver decided not to discipline Harper for his conduct. (Oliver Dep. at 13-15; Craig Dep. at 21-23). Rolin believes that she was terminated as a result of her

reporting the incident between Perez and Harper to Rosie's management.  (Rolin Dep. at 47).

**Suspension of Rolin**

Rosie's has a policy that prohibits servers from discussing tips on the Floor. (Clifford Dep. at 58-59; Clifford Affidavit at 1, 23).  This policy is important because violation of this policy can result in offending customers and loss of patronage.  (Clifford Dep. at 59).  However, Clifford testified that "tips have been discussed in [his] presence."  (Clifford Dep. at 117).

On or about November 29, 2003, which was the Saturday after Thanksgiving, Corley, who was working as the Floor Manager, received a complaint from a customer that her server had been very rude about the amount of tip that the customer left for the server.  (Corley Affidavit at 2).  The customer identified Rolin by name and explained to Corley that Rolin had rudely commented on the amount of the tip that the customer had left.  (Corley Affidavit at 2).  The customer further explained that she had walked up behind Rolin while Rolin had her back turned so that she could not see the customer, and she overheard Rolin complaining about the amount of tip that the customer had left.  (Corley Affidavit at 2).  The customer was offended and expressed the same to Corley.  (Corley Affidavit at 2).

11

Corley relayed the customer's complaint to Oliver.  (Corley Affidavit at 2).

Oliver issued a blue slip and a three day suspension to Rolin for complaining about

the amount of the tip.  (Rolin Dep. at 36-37).  Rolin admits that she was aware that

it was a serious violation of Rosie's policies to make any comment about the size

of a tip while on the Floor.  (Rolin Dep. at 37-38).  Rolin stated she violated the

policy and that the punishment was not fair, but rather a "little harsh."  (Rolin Dep.

at 37-38).

**Complaint of Sexual Harassment Against Rolin**

Phillip Small was employed at Rosie's while he was in college beginning

after his spring semester, 2002.  (Small Affidavit at 1).  He worked at Rosie's over

his summer and winter breaks between spring and fall semester and fall and spring

semester respectively.  (Small Affidavit at 1; Craig Dep. at 15-16).  After Small

completed his two week training at the Restaurant, Rolin was hired.  (Small

Affidavit at 1).  During Rolin's training, Small was asked to act as Rolin's trainer

for one night as a result of Rolin's assigned trainer's absence.  (Small Affidavit at

1).  Small worked with Rolin over the summer and winter breaks of 2002 without

incident.  Rolin alleges she does not have any personal knowledge of Small and did

not make sexually inappropriate comments to co-workers.  (Rolin Dep. at 32).

Beginning in the summer of 2003, Rolin began making sexually

inappropriate remarks to Small, in Small's presence and about Small to other co-workers. (Small Affidavit at 2). Rolin's sexual comments to Small were, on the whole, constant throughout his summer and winter break in 2003. (Small Affidavit at 2). Shortly before Christmas, 2003 Rolin told him that she was going to wait for him in the Restaurant parking lot and "have her way with [him]." (Small Affidavit at 2). Around that same time, but on a separate occasion, while Small was standing at the servers' station clocking in, he looked up and Rolin was staring directly at his crotch. Small asked Rolin what she was doing and she responded by asking: "how big are you," referring to his penis size. (Small Affidavit at 2). During the remainder of that shift, Rolin brought other female servers to where Small was working and teased him about his penis. (Small Affidavit at 2). Plaintiff denies making any remarks regarding a fellow employee's "penis size." (Rolin Dep. at 32).

Following Christmas 2003 and before Small returned to school in January 2004, Small made his first and only complaint of sexual harassment to Oliver about Rolin. (Oliver Dep. at 16). Small told Oliver that Rolin was saying things to him and looking at him in ways that made him feel uncomfortable and that the situation was so bad that he tried to avoid Rolin at all times. (Oliver Dep. at 16). Small expressed to Oliver that he did not want Rolin to lose her job over his complaint,

but he did want Rolin's sexual comments and staring to stop. (Small Affidavit at 2; Oliver Dep. at 16; Craig Dep. at 17). Oliver confronted Rolin about her conduct towards Small. (Oliver Dep. at 19). When Oliver was talking to Rolin, she did not deny that she was making inappropriate comments to or staring at Small. (Oliver Dep. at 19). Oliver indicated to Rolin that her conduct toward Small needed to stop. (Oliver Dep. at 19). Rolin's only response was to ask if Small had requested Oliver to speak with her regarding her conduct. (Oliver Dep. at 19). Oliver was instructed by Craig to issue Rolin a written warning, but Oliver failed to do so. (Craig Dep. at 19).

**The March 2004 Complaint of Sexual Harassment Against Rolin**

Several weeks later, on or about March 5, 2004, Corley was the Floor Manager and Rolin was waiting on four individuals that were seated at table thirty-four. (Rolin Dep. at 31, 39; Oliver Dep. at 21; Clifford Dep. at 87; Corley Affidavit at 3). The men at the table were drinking, being boisterous, and were asking Rolin to be their "girlfriend" for the night. (Rolin Dep. at 39-40). During the course of the night, the patrons became very loud and Rolin notified Clifford that the guests were drinking heavily. (Rolin Dep. at 41).

One of the male customers then asked Corley, "Are you Amy's lesbian lover?" (Corley Affidavit at 3). Corley then responded emphatically, "No."

(Corley Affidavit at 3).  Then the other male seated at the table said, "Then tell us about the silver bullet." [4]  Shocked, Corley told the male customer that she did not know what he was talking about at which time the first male said, "We know that you know what that is – are you a lesbian or not?"  Corley again responded emphatically, "No" and immediately walked away.  (Corley Affidavit at 3; Clifford Dep. at 88).  Rolin denies that she discussed "silver bullet vibrators," or lesbian lovers" in the workplace.  (Rolin Dep. at 34).

While Corley, who was visibly upset, was making her way through the kitchen going to the Restaurant's office, Rolin approached her smiling and asked, "What did they want?"  (Corley Affidavit at 3).  Corley responded by telling Rolin that the customers asked "something about a lesbian and a silver bullet."  (Corley Affidavit at 3-4).  Rolin then laughed and turned and walked away from Corley. (Corley Affidavit at 4).  From that, Corley believed that Rolin had intentionally set her up for embarrassment at the table and that Rolin knew what the customer was going to do when she sent Corley to the table.  (Corley Affidavit at 4).

Oliver was working that night and was walking from the Restaurant office in the back of the kitchen to the dinning room and he saw Corley going into the office visibly upset.  (Oliver Dep. at 24).  Oliver asked Corley why she was upset

---

[4]  A "silver bullet" is a small vibrator.  (Clifford Dep. at 89).

and she told him what had happened.  (Corley Affidavit at 4; Oliver Dep. at 25).

Clifford went into the office and also saw Corley crying.  (Clifford Dep. at 88-89).  Corley described to Clifford and Oliver the events that had just taken place at table thirty-four and that she believed that Rolin had arranged the whole incident to embarrass her.  (Corley Affidavit at 4; Clifford Dep. at 87).

After receiving Corley's complaint, Clifford called and discussed the situation with Craig.  (Clifford Dep. at 90-92)  While talking to Craig and discussing the incident, Clifford informed Craig that she, on two separate prior occasions, had overheard a conversation between Rolin and a friend,  Kathy Steelman, jokingly refer to Steelman as her "lesbian lover" and overheard Rolin tell a group of female co-workers that she liked to give "silver bullets" as gifts at lingerie parties.  (Clifford Dep. at 93-94).  At that time, it was decided that, based on Corley's allegations, the sexual harassment of Phillip Small[5] just over a month earlier, and the conduct involving the discussion of tips in front of a customer that resulted in Rolin's suspension just four months earlier, it was in Rosie's best interest to terminate Rolin.  (Clifford Dep. at 90-92, 119-120).

At the end of the shift, Clifford asked to speak with Rolin.  Clifford and Oliver confronted Rolin regarding Corley's allegations.  (Rolin Dep. at 42-43).

---

[5] Plaintiff denies knowing Phillip Small and discussing "silver bullet vibrators" or "lesbian lovers" in the workplace.

Clifford told Rolin that Corley was very upset about the events that had transpired, that she believed that Rolin had arranged for Corley to go to table thirty-four. Clifford then told Rolin that she was terminated. (Rolin Dep. at 42-44). Corley was present at this meeting, crying, unable to speak, and visibly upset. (Rolin Dep. at 53-54).

Notwithstanding, Rolin testifies that she was unable to remember much about the incident. (Rolin Dep. at 34). Rolin denies asking Corley to go to table thirty-four and pretend to be Rolin's "lesbian lover." (Rolin Dep. at 41). Rolin also denies the "silver bullet" comment. (Rolin Dep. at 41).

Craig and Clifford believed that Rolin engaged in the conduct alleged by Corley. (Craig Dep. at 82-29; Clifford Dep. at 90-91). Defendant affirmatively stated that race discrimination and sexual harassment are on the "same level." (Craig Dep. at 12). Clifford testified harassment is "any kind of behavior that would make you feel uncomfortable, whether it be racial harassment, whether it be, you know, gender harassment, anything that somebody is saying to you that would make you feel uncomfortable at your job." (Clifford Dep. at 29-30).

Other than the alleged victim, there were no witnesses to Rolin's alleged sexual harassment. (Clifford Dep. at 103). Craig testified that when an employee has never engaged in conduct similar to conduct that is the subject of the complaint

17

against the employee, then Rosie's is "more likely not to terminate an employee" without corroborating. (Craig Dep. at 25). While it is true that there were no witnesses to the incident between Corley and Plaintiff, Clifford had, on a prior occasion, overheard Rolin refer to a friend as her "lesbian lover" and, on another occasion, overheard Rolin tell a group of female co-workers that she liked to give "silver bullets" as gifts at lingerie parties. (Clifford Dep. at 93-94). Additionally, Rosie's had received a prior complaint of sexual harassment against Plaintiff from Phillip Small, which occurred just over a month before Corley's complaint. (Clifford Dep. at 90-92, 119-120).

## IV.  Applicable Substantive Law and Analysis

**<u>Gender Discrimination</u>**

Plaintiff Rolin alleges she was subjected to discrimination based on gender when the Defendant applied its policies of discrimination and harassment prevention in a discriminatory manner by treating a male more favorably than the Plaintiff in its respective investigations and punishments of alleged violations of the discrimination and harassment policies.

Plaintiff Rolin bases her gender discrimination claim on the circumstantial evidence framework as established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dept. Of Community Affairs v. Burdine</u>, 450 U.S. 248

(1981).  Plaintiff Rolin may establish a prima facie case of disparate treatment based on gender by showing that:  (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated a similarly situated employee outside her classification more favorably; and (4) she was qualified to do the job.  Wilson v. B/E Aerospace, 376 F.3d 1079, 1091 (11th Cir. 2004); McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

If the plaintiff succeeds in establishing a prima facie case, that mere fact does not foreclose summary judgment in favor of the defendant, but the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981); Walker v. Prudential Property & Casualty Ins. Co., 286 F.3d 1270, 1274 (11th Cir. 2004); McCarthney v. Griffin-Spalding Bd. of Ed., 791 F.2d 1549, 1553 (11th Cir. 1986).  This articulation is a burden of production only, not proof; in articulating its reason the defendant need not persuade the court of its actual motivation.  Burdine, 450 U.S. at 254-56; Chapman, 229 F.3d at 1012; Walker, 791 F.2d at 1553.

Once the defendant has articulated one or more such reasons, the rebuttable presumption of discrimination drops from the case, and the plaintiff must come

forward with significantly probative evidence of pretext with respect to every proffered reason in order to avoid summary judgment. <u>Chapman</u>, 229 F.3d at 1024-25, 1037; <u>Carter</u>, 870 F.2d at 585; <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 829 (11th Cir. 1988).

The Defendant concedes that Plaintiff is a member of a protected class; she is a female.  Defendant also concedes  that she was subjected to an adverse employment action when she was terminated and that Plaintiff Rolin was qualified to do the job.  The Defendant challenges that a similarly situated employee outside Plaintiff's protected class was treated more favorably.

The Defendant asserts that Rolin was terminated after three consecutive incidents, separated in time only by a few months.  (Clifford Dep. at 90-92, 119-120).  The first incident, on the last day of November 2003, was Rolin's discussion of a tip in front of a customer.  The second incident was the complaint of sexual harassment of Phillip Small.  Rolin was confronted and given a warning by acting General Manager Oliver about making sexually inappropriate comments to and staring at Small.  (Oliver Dep. at 19).  The third incident was Amanda Corley's March, 2004 complaint of sexual harassment against Rolin for suggesting to customers that her supervisor, Corley, was her lesbian lover.  (Rolin Dep. at 42-44).  Following this third incident, Rolin was terminated.  (*Id.*)

20

Plaintiff Rolin denies knowing Phillip Small and sexually harassing him. Plaintiff Rolin denies suggesting to customers that Corley was her lesbian lover. Plaintiff was server for a table of customers who had been drinking "too many" alcoholic beverages.  (Rolin Dep. at 39).  Plaintiff reported the consumption to Clifford.  (Rolin Dep. at 39).  According to Clifford, Corley stated the customers made rude comments and asked her sexual questions.  (Craig Dep. at 27).  Corley then accused Rolin of "setting her up."  (Craig Dep. at 28).  Clifford and Oliver, both managers on duty that evening, observed Corley's hysterics.  Clifford then made an immediate telephone call to Craig.  (Clifford Dep. at 90).  During this telephone call, Clifford and Craig made a mutual decision to terminate Plaintiff, despite the lack of witnesses in what is an apparent "she said/she said" situation. (Clifford Dep. at  91).  Clifford and Craig made this decision despite the fact that servers are not responsible for the behavior and conduct of the customers at their tables.  (Clifford Dep. at 111).  Clifford chose not to interview any witnesses because she "had Amanda's statement and … Amy's statement."  (Clifford Dep. at 106).  Craig testified that when a "he say/she say" situation occurs and "we have no witnesses to back either side … we try to make a decision which will make both parties happy."  (Craig Dep. at  25).  Craig further testified that he will probably not terminate an employee in such situation when that employee has not had

conduct of that nature before.  (Craig Dep. at 25).

Plaintiff Rolin identifies Perez as her comparator.  Defendant concedes that Plaintiff's comparator Barney Perez's first incident violated the harassment policy by calling a co-worker a "nigger" and a "porch monkey."  Defendant disciplined Perez only after Plaintiff and another employee reported him making racially hostile remarks.  Perez received a "blue slip" and a suspension.  Perez received the benefit of an investigation and the interviewing of witnesses removing any doubts as to culpability regarding his use of racial slurs.  Defendant did not terminate Perez even though it has a "zero tolerance" policy regarding harassment.  Although the Defendant contends that Perez's conduct and Rolin's alleged conduct are not substantially similar, Craig stated that racial harassment and sexual harassment are of the same level of importance.  (Craig Dep. at 12; Defendant Brief, p. 19 ). Plaintiff was fired without an investigation and the interviewing of witnesses for the  incident with Corley.  In addition, Plaintiff denies knowing Phillip Small and the   Defendant  does  not  have  any  documentation   that  the  alleged  sexual harassment of Small by Plaintiff took place.

The Court finds that Plaintiff has raised a genuine issue of material fact as to whether Perez, a similarly situated male outside of Plaintiff's protected class, was treated more favorably than she, when the Defendant applied its discrimination

and harassment policies.

Even assuming that Plaintiff has satisfied a prima facie case without any issues of fact pending, the Defendant has proffered legitimate, non-discriminatory reasons for terminating Plaintiff Rolin.  The Defendant's burden is only a burden of production.  The Defendant proffers that it terminated Plaintiff because she sexually harassed Phillip Small and Corley.  In addition, Plaintiff Rolin had previously violated the policy of not discussing tips in the presence of customers.

Once the Defendant has proffered legitimate, non-discriminatory reasons for its employment decision, Plaintiff Rolin must demonstrate that the Defendant's proffered reasons are pretextual in order to avoid summary judgment.  See Amos v. Tyson Foods, Inc., 153 Fed. Appx. 637, 646 (11th Cir. 2005).  Plaintiff Rolin can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).  Plaintiff Rolin asserts that the Defendant's conduct is pretextual because she denies that she actually engaged in the conduct that Corley and that Phillip Small accuse her of, and denies  that she ever engaged in any sexually inappropriate conversations while at work.  If Clifford and Craig, the decision makers for Rolin's termination believed at the time they

23

made the decision to terminate her that Rolin had engaged in conduct alleged, then Rolin's contention that she did not actually engage in the conduct does not create a genuine issue of material fact.  See Moore v. Sears Roebuck and Co., 683 F.2d 1321, 1323, fn4 (11th Cir. 1982).  In the present case, Rolin readily concedes Clifford and Craig honestly believed Corley's allegations against her.  (Rolin Dep. at 44-46).  Therefore, whether Clifford and Craig were correct in their assessment of Rolin's conduct does not create a genuine issue of material fact for the jury.  Id. What is relevant is whether Clifford and Craig held honest, good faith beliefs in their assessment.  Moore, 683 F.2d at 1323, fn4 (jury need not determine whether defendant was correct in its assessment of the employee's performance, only whether defendant believed in good faith facts upon which the decision was made); Thomas v. Troy City Bd. of Educ., 302 F.Supp.2d 1303, 1307 (M.D. Ala. 1994) (reliance on credit information in making decision was still a legitimate, nondiscriminatory reason for the action, even though the information later turned out to be faulty); Walker, 286 F.3d at 1274 (the actual knowledge and actions of the decision maker are at issue, "not constructive knowledge and assumed intent").

The Plaintiff further asserts that the Defendant's proferred reasons are a pretext for discrimination because Defendant has a history, specifically, when considering a case-by-case basis regarding employees accused of harassment, that

24

males are treated more favorably than females. Plaintiff was told she was terminated because she violated the "zero tolerance" harassment policy. Plaintiff asserts that the Defendant's stated reason simply doesn't add up: Perez violated the company's harassment policy by "running his mouth" on two occasions; one occasion resulted in racially hostile language, the other occasion resulted in sexual harassing comments. Plaintiff on the other hand has only one act of alleged harassment committed by customers whose actions she is not responsible for and that involve no witnesses. Defendant normally does not terminate employees without some sort of witness to the alleged misconduct. (Craig Dep. at 25). Plaintiff's other violation of Defendant's policy involved the etiquette and protocol regarding a customer's tip. Plaintiff asserts that the Defendant terminated Plaintiff for the same or lesser misconduct than that of a male employee who was treated better in similar situations.

The Court finds that Plaintiff Rolin has presented sufficient evidence to raise a genuine issue of material fact as to whether the Defendant's proffered legitimate, nondiscriminatory reasons for its employment decision are a pretext for gender discrimination. Accordingly, the Defendant's motion for summary judgment is due to be denied as to Plaintiff Rolin's gender discrimination claims based on the disparate application of disciplinary work policies.

**Retaliation**

Plaintiff Rolin asserts that she suffered a retaliatory action when she was terminated for reporting discrimination in the workplace committed by the male comparator who was treated more favorably under the Defendant's discrimination policies.  Specifically, Plaintiff Rolin claims that her complaint to Matt Sikes regarding the Harper/Perez argument in November 2003 resulted in her termination in March 2004.  (Rolin Dep. at 47).

To establish a prima facie case of Title VII retaliation, Rolin must show that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."  Embry v. Callahan Eye Foundation Hospital, 147 Fed. Appx. 819, 830 (11th Cir. 2005).

The Defendant asserts that Plaintiff Rolin cannot establish a prima facie case of  Title VII retaliation because she did not engage in a "statutorily protected expression."  Rolin reported to Matt Sikes, a member of Rosie's management, that Perez, a Hispanic server, had called Harper, an African American server, a "nigger" and a "porch monkey."  (Rolin Dep. at 25; Sikes Affidavit, ¶; Clifford Dep. at  72). The Defendant asserts that, just as in Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959-60 (11th Cir. 1997), Rolin's reporting the

isolated comment by Perez does not constitute opposition to an unlawful employment practice of Rosie's and is not "statutorily protected conduct." Little**,** 103 F.3d at 959-60. Therefore, the Defendant asserts that Rolin cannot establish a prima facie of retaliation as a matter of law. Id.

Plaintiff asserts that her informal complaint to Sikes opposing Perez's use of racial slurs is statutorily protected expression. "The protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [Plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures." Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989). Title VII extends protection for informal and formal complaints.

> Under Title VII, an employee engages in statutorily protected expression if he either (1) opposes any practice made an unlawful employment practice by Title VII; or (2) makes a charge, testifies, assists or participates in any manner in an investigation, proceeding, or hearing under Title VII.

42 U.S.C. §2000e-3(a). Upon review of the record, the Court finds that Plaintiff Rolin's opposition to the racial remark made by Perez to Harper, Rolin's co-workers, is protected conduct within the parameters of the statute only if Perez's conduct can be attributed to the Defendant. Little**,** 103 F.3d at 960. Plaintiff has failed to show that her opposition was directed at an unlawful employment practice

of the Defendant and not the act of discrimination by a private individual.  For instance, Plaintiff has not presented any evidence that once she complained to the Defendant about Perez's racial remarks, the Defendant endorsed Perez's behavior by failing to take prompt remedial action.  Little, 103 F.3d at 959 (quoting Silver v. KCA, Inc., 586 F.2d 138 (9th Cir. 1978)).

Plaintiff asserts that although she can't demonstrate that Perez's comments constituted an unlawful employment practice of the Defendant, she can establish a prima facie case of retaliation under the opposition clause of Title VII if she shows that she had a good faith, reasonable belief that the employer engaged in unlawful employment practices.  See Rollins v. State of Fla. Dept. Of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989).  Under this standard, a plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented.  Little, 103 F.3d at 960. Plaintiff specifically complained to management regarding Perez's racially inappropriate remarks.  Defendant specifically stated that it "do[es] not discriminate." (Craig Dep. at 9).  Furthermore, Defendant's discrimination policies are given to every employee upon hiring.  (Defendant's Response to Interrogatory No. 3.)  Upon review of the record, the Court finds that Plaintiff has not presented

28

sufficient evidence to demonstrate that she reasonably believed Perez's comments were a violation of Title VII by the Defendant.

Even assuming, however that Plaintiff satisfied the first element, that she engaged in statutorily protected expression, she cannot show that there is a causal relationship between her engaging in statutorily protected expression and her termination.[6] Craig and Clifford were the decision makers who determined to fire Rolin. Clifford did not learn that Rolin was involved in the reporting of the incident between Perez and Harper until Rolin filed her EEOC charge of discrimination on or about April 19, 2004. (Clifford Affidavit at 2). Plaintiff has not presented sufficient evidence to show that Craig's alleged knowledge of her reporting the incident between Perez and Harper is causally related to her termination.

Further, Plaintiff asserts that close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000). However, there is case law holding that a three and a half month period between protected activity and termination did not, standing alone, show pretext.[7] Wascura v. City of

---

[6] Clifford's testimony that Plaintiff's "history of her mouth" resulted in her termination does not amount to direct evidence. (Clifford Dep. at 120). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir.1997).

[7] In Drago v. Jenne, No. 05-1127, 05-14866, 2006 WL 1737358 (11th Cir. June 27, 2006), the Eleventh Circuit recently affirmed the district court's grant of summary judgment in favor of the defendants and the related denial of the plaintiff's Rule 59(e) motion to alter or amend the

South Miami, 257 F.3d 1238, 1245 (11th Cir. 2001).  The Court finds that Plaintiff Rolin has not presented sufficient evidence to establish that her report of the Perez/Harper incident a few months before her termination and her termination are causally related.  Accordingly, the Defendant's motion for summary judgment as to Plaintiff Rolin's retaliation claim is due to be granted.

## V.  Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment is due to be **Granted** as to Plaintiff's retaliation claim and **Denied** as to Plaintiff's gender discrimination claim.

**DONE** and **ORDERED** this 5th day of July, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
**United States District Judge**

---

judgment under the Family Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act ("FCRA").   As to affirming the dismissal of the retaliation claims under the FMLA, ADEA, and FCRA, the Court held that the plaintiff failed to present sufficient evidence that the adverse employment action (his demotion) was causally linked to his only alleged protected activities (the verbal complaints to his superiors and the written EEO complaint) because (i) an elapse of three months is insufficient to show proximate cause, and (ii) the record showed that his employer had considered demoting him prior to his alleged protected activities.  Drago v. Jenne, No. 05-1127, 05-14866, 2006 WL 1737358 (11th Cir. June 27, 2006)